UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| ALLEN L. BOND | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 13-224-GFVT |
| | ) | |
| V. | ) | |
| | ) | |
| CAROLYN COLVIN, | ) | **ORDER** |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Allen Bond brings this action pursuant to 42 U.S.C. §405(g) to challenge a final decision of the Defendant, the Commissioner of Social Security ("Commissioner"), which denied him application for disability insurance benefits and supplemental security income (SSI). [R. 1]. For the reasons set forth below, the Court will deny Bond's Motion for Summary Judgment [R. 16] and grant the Commissioner's [R. 17].

I

Consistent with the Court's practice and pursuant to 28 U.S.C. § 626(b)(1), this matter was referred to United States Magistrate Judge Edward B. Atkins for the issuance of a Report and Recommendation ("R&R") containing his proposed findings and recommendations regarding the parties' cross-motions for summary judgment. [*See* R. 20]. Magistrate Judge Atkins filed his R&R [R. 20] on July 3, 2014. As is his right, Bond timely filed objections to this recommended disposition [R. 21] and the Commissioner has responded to those objections. [R. 22]. This Court must now make a *de novo* determination of those specific portions of the R&R

to which objections are made. 28 U.S.C. § 636(b)(1).

II

Before turning to the specific objections that trigger *de novo* review, the Court first notes an objection that does not. In order to receive *de novo* review by this Court, any objection to the Report and Recommendation must be specific. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). A specific objection "explain[s] and cite[s] specific portions of the report which [counsel] deem[s] problematic." *Robert v. Tesson*, 507 F.3d. 981, 994 (6th Cir. 2007) (quoting *Smith v. Chater*, 121 F.3d 709, 1997 WL 415309 at *2 (6th Cir. 1997) (unpublished opinion)). In his opening paragraph, Bond states that he "specifically objects to all findings of fact and law in the Magistrate Judge's decision." [R. 21]. This, however, is not a specific objection. Rather, this is a statement of a general objection to Judge Atkin's entire Recommended Disposition with the word "specifically" added to it. A general objection that does not identify specific issues from the Magistrate's report is not permitted because it renders the recommendations of the magistrate useless, duplicates the efforts of the magistrate, and wastes judicial economy. *Howard v. Secretary of Health and Human Services*, 932 F.2d 505, 509. (6th Cir. 1991). Thus, save those matters relating to the actual specific objections, the Court need not conduct a *de novo* review of all the factual findings of the Magistrate Judge. In fact, finding no fault with the Magistrate Judge's general factual recitation, the Court incorporates his discussion of the record into this order.

A

Bond's first two objections address three related issues. He initially argues that substantial evidence does not support the ALJ's decision to not fully credit Bond's statements regarding the intensity, persistence, and limiting effects of his symptoms. In Bond's view, the

improper exclusion of these statements rendered the ALJ's consideration of his obesity-related limitations incomplete. Finally, Bond claims that, in reaching the contrary conclusion on these issues, the Magistrate Judge engaged in the wrong analysis.

In determining whether a claimant is disabled, the Commissioner considers statements or reports from the claimant. 20 C.F.R. § 404.1529. To determine whether statements of a claimant are credible, ALJ's employ the following two-part test:

> First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a)) (internal citations omitted). In 20 C.F.R. § 404.1529, the Social Security Administration informs claimants that, in certain credibility determinations, the following factors should guide the analysis of the agency decision makers:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529; *see also, Felisky v. Bowen*, 35 F.3d 1027, 1037 (6th Cir. 1994). "Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints 'based on a consideration of the entire case record.'" *Rogers,* 486 F.3d at 247.

Importantly, it is within the province of the ALJ, rather than the reviewing court, to evaluate the credibility of claimant. *Id.* (citing *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir.1997); *Crum v. Sullivan,* 921 F.2d 642, 644 (6th Cir.1990); *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir.1981)). "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (citations omitted). Even so, the credibility determinations of the ALJ must be reasonable and supported by substantial evidence. *Id*. at 249.

Bond testified that he is 425 pounds and cannot perform his past work because of congestive heart failure, sleep disorder, tenderness and osteoarthritis pain in his knees, lumbar back pain with pain radiating to both legs to his feet, hypertension, degenerative joint disease of the lumbar spine, and chronic edema around his ankles. [Tr. 23-24, 39-52], As a result of these impairments, Bond testified that he can only walk five minutes, stand ten minutes, lift ten pounds, and sit fifteen minutes. [*Id.*]. He complains of shortness of breath and pain in his back radiating down to his legs such that he cannot stand for long periods of time and has to elevate his feet and legs. [*Id*].

The ALJ found that Bond's stated impairments could reasonably have been expected to cause his alleged symptoms, but his statements concerning the intensity, persistence, and limiting effects of these symptoms are not fully credible. [Tr. 24]. The ALJ then proceeded to consider the above-referenced factors by citing to portions of the record in those areas that contradicted Bond's testimony. The record reveals that Bond received conservative treatments that generally helped his symptoms. [Tr. 23-24, 42, 371-73]. By his own testimony a C-PAP machine helps him sleep eight hours a night and he takes Tylenol and prescription medication for his arthritis.

4

[Tr. 23-24, 43-48]. He experienced no side effects from his medications, and no physical therapy or surgery was recommended for his back issues. [Tr. 24, 45, 228, 242, 263, 277].

The ALJ acknowledged medical evidence of the record that stood in direct contradiction to Bond's subjective reports about the severity of his limitations. First, x-ray results showed only mild degenerative disk disease. [Tr. 24, 372]. Clinical tests revealed negative straight leg raising. [Tr. 24, 482]. Dr. Bradley Davis, an examining physician on whose opinion the ALJ gave weight, found normal gait, the ability to walk without assistance, a slight restricted range of motion, no sensory or motor deficits, normal reflexes, and negative straight leg raises. [Tr. 25-26, 406-410]. Dr. Davis also found only mild restrictions in lifting, standing, carrying, walking and climbing, as well as moderate restrictions in balancing, stooping, crouching, kneeling, crawling, pushing, and pulling. [*Id.*] Dr. Timothy Gregg, a state agency consultant on whose opinion the ALJ placed great weight, found that Bond could lift twenty pounds occasionally, ten pounds frequently, engage in limited pushing and pulling, and could occasionally balance, stoop, kneel, crouch, and crawl. [Tr. 26-27, 416-22]. Dr. Gregg opined that, in the context of an eight-hour workday, Bond could walk or stand for two hours and sit for six hours. [*Id.*] While this medical evidence is consistent with the ALJ's RFC, it suggests limitations that are much less restrictive than those found in Bond's subjective testimony.

Finally, the ALJ referenced Bond's daily activities. As noted by the ALJ, the record is clear that Bond carried out security guard duties until 2008 despite his obesity. [Tr. 25, 290, 307-308, 330-32, 377, 389-90]. It is true that his weight fluctuated over the course of his employment, but he was near 400 pounds during much of the time. [Tr. 25, 307-308, 330-32, 377, 389-90]. In fact, even in the early and middle portions of his tenure there were times during which he weighed 450 pounds or greater. [Tr. 307, 330-331; R. 16 at 15]. Further, the ALJ

5

noted that Bond walks for exercise, sits and reads, sits through church services on Sundays,[1] takes care of simple meals, cares for his personal hygiene, cares for his pet, and shops for food. [Tr. 24, 45-52, 231-239, 240-244]. These activities would seem to exceed the capacity of someone as limited as Bond represents himself to be. Considering Bond's level of activity in conjunction with the nature of his treatment and the medical evidence of the record, the Court agrees with the Magistrate Judge that substantial evidence supports the ALJ's decision concerning Bond's credibility.

This conclusion is not disturbed by Bond's additional arguments to the contrary. Bond criticizes the Magistrate Judge for failing to consider the medical testimony of Dr. Swisher who opined that "[t]he only practical and viable solution is for him to consider gastric bypass surgery." [R. 21 at 4, Tr. 383]. However, "[t]he findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *see also Her v. Commissioner of Social Security,* 203 F.3d 388, 389–90 (6th Cir.1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached."). Since substantial evidence supports the ALJ's conclusion that Bond's statements are not fully credible, the fact that Bond might have substantial evidence in support of his view that he is credible is not dispositive at this level of review.[2]

---

[1] Though Bond had noted in a statement that he could not attend church services every Sunday [Tr. 236], he appears to tell the ALJ during the hearing that he did attend about every Sunday. [Tr. 50].

[2] It is noteworthy that Bond has referenced Dr. Swisher as being additional evidence in support of the credibility of both Bond and his supervisor, Drew McLellin. Bond does not appear to have made a separate argument or objection about the weight ascribed to Dr. Swisher or treating physician rule generally.

6

Bond also argues that the ALJ overstated the extent to which he engaged in daily life activities by failing to recognize the difficulties that he faces and the help he receives in order to carry out those activities. But the ALJ does expressly note that he receives help. His family helps him with living expenses, his sister does the cooking and household chores for him, and his brother-in-law transports him places. [Tr. 24-26]. Furthermore, even if Bond missed a few Sundays at church, had some help caring for his pet, or experienced other difficulties, the fact remains that Bond did engage in some activities in his daily life that he could not have done if he was as limited as he testified. More importantly, his daily life activities were only one of the factors considered by the ALJ in measuring his credibility. Taken together, substantial evidence of the record supports a finding that the factors weigh against fully crediting Bond's subjective testimony.

As Bond sets up his argument, a finding that the ALJ did not err in the weight ascribed to Bond's credibility would necessarily undermine the notion that the ALJ's unsupported credibility determination "resulted in incomplete consideration of Bond's obesity-related limitations." [R. 16]. However, for the purposes of completeness, the Court notes that the ALJ did properly consider Bond's obesity under Social Security Ruling 02-1p. Though obesity no longer qualifies as a listed impairment, SSR 02-1p states that "[a]n assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time." SSR 02-1p. This ruling does not offer "any particular procedural mode of analysis for obese disability claimants," but provides that "obesity, in combination with other impairments, 'may' increase the severity of the other limitations."

*Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010) (citing *Bledsoe v. Barnhart,* 165 Fed.Appx. 408, 412 (6th Cir.2006)).

In *Bledsoe*, the Sixth Circuit offered practical assistance in applying SSR 02-1p. The court found that the ALJ had properly considered the claimant's obesity by making "explicit mention of [the claimant's] obesity in his finding of facts" and by "crediting an expert's report that considers obesity." *Bledsoe*, 165 F. App'x at 412; *see also Coldiron*, 391 F. App'x at 443 (applying the same analysis). Here, the ALJ mentions Bond's obesity on several occasions in discussing the facts. On one occasion, the ALJ notes that "[a] a review of the medical evidence of the record reflects the claimant is morbidly obese weighing 450 pounds and a height of 69 inches with a body mass index of 66.4." [Tr. 24]. Further, the ALJ credited the medical testimony of Dr. Davis and Dr. Gregg, both of whom were aware of and referenced Bond's obesity. [Tr, 406-408; Tr. 26-27]. Dr. Davis also specifically accounted for Bond's 2+ edema of the legs. [Tr. 406]. Thus, the ALJ's consideration of Bond's obesity meets the requirements under SSR 02-1p.

Bond is correct that the Recommended Disposition does mistakenly refer to Listing 1.04 when discussing Bond's obesity-related limitations. However, this seems to have simply been a typographical error as the Magistrate's analysis appears to be in in the context of Step Four and is consistent with the SSR 02-1p analysis discussed above. Nevertheless, the important point is that the ALJ properly considered Bond's obesity. Bond's objections to the contrary are, therefore, overruled.

B

In his final objection, Bond argues that the ALJ improperly disregarded the credibility of his supervisor, Drew McLellin. McLellin supervised Bond during his employment with the

8

realty company. He reported that Bond was terminated due to an "inability to perform job duties." [Tr. 254]. McLellin elaborated that Bond "wasn't able to sit for extended periods of time (8-9 hours)," and that he was "not able to walk to check gates or doors, as needed, on a regular and consistent basis." [Tr. 255]. He concluded that he would not hire Bond again because he is "not physically able to handle the job duties." [Tr. 255].

Social Security Ruling 06-03P states that, "In considering evidence from 'non-medical sources' who have not seen the individual in a professional capacity in connection with their impairments, such as spouses, parents, friends, and neighbors, it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." SSR 06-03P at *6. Thus, statements for employers like the one given by McLellin would generally fit in this category of "other sources." *See Stetz v. Colvin*, 1:13-CV-00116, 2013 WL 4523512 (N.D. Ohio Aug. 26, 2013). In contrast to treating sources, SSR 06-03P also provides that "the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03P at *6; *see Marchelle Epperson v. Comm'r of Soc. Sec.*, 1:10 CV 1502, 2011 WL 3749945 at *6 (N.D. Ohio Aug. 5, 2011)).

The ALJ afforded little weight to McLellin's opinions. In support of this conclusion, the ALJ contrasted McLellin's opinion with medical sources, noting "the accuracy of [McLellin's] statements is given less weight than the medical sources of the record." [Tr. 25]. This contrast is more clearly shown when the paragraphs immediately following the discussion of McLellin

9

detailed the medical opinions of Dr. Bradley and Dr. Gregg, which are largely inconsistent McLellin's observations. Specifically, while McLellin testified that Bond was not consistently able to walk to check gates and doors, Dr. Bradley found that that he was, among other things, "able to walk without the use of an assistive device," and that he only demonstrated mild restrictions in walking. [Tr. 25-26, 406-410]. Dr. Gregg opined that Bond could stand for two hours in an eight-hour work day. [Tr. 26-27, 416-22]. Additionally, the ALJ noted that Bond's activities discredited McLellin's statements. The ALJ noted Bond had been morbidly obese during the times that he worked for McLellin. Further, the ALJ noted that in his daily activities Bond could get in and out of vehicles, sit in church services, sit to read and watch television, and take care of his personal hygiene. [Tr. 25-26]. From this information it is clear to this reviewing Court, and it should be clear to Bond, that ALJ followed the guidance of SSR 06-03P and that McLellin's opinion received less weight because it is inconsistent with the medical sources of the record and inconsistent with the activities of Bond's daily life. This conclusion is supported by substantial evidence.

Bond's arguments to the contrary do not disrupt this conclusion. Bond states that it makes no difference that McLellin is not medically trained since he is reporting on observations that common people could make. As an initial matter, that his lay opinions are inconsistent with the medical opinions of the record is a proper ground to evaluate credibility under SSR 06-03P. *See* SSR 06-03P (stating that the ALJ should consider "whether the [other-source] evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence."). Additionally, in some ways, McLellin's statements go beyond that of a common observer. McLellin did not just note that Bond *did not* sit for long periods of time or walk to open doors, he opined that "he is *not physically able* to handle the job duties." [Tr. 255]

10

(emphasis added). The ALJ is justified in crediting the opinions of medical sources over a layman on this conclusion. Bond's remaining substantive arguments – concerning Dr. Swisher's opinions and the difficulties Bond had in carrying out the activities of his daily life – are ineffectual largely for the same reasons as previously discussed in the context of Bond's own credibility.

Additionally, in the context of this objection, Bond makes much of the Magistrate's mention of the "good reasons" standard of the treating physician rule, which is not the applicable standard in the context of other sources of evidence. It would be a fair reading of the Magistrate's comments, especially in the context of the Bond's criticisms of the ALJ's reasoning, that good reasons must be provided *only* in the context of a treating source's opinion. *See* R. 20 (wherein the Magistrate stated, "In addition, the ALJ has a duty to provide good reasons in the decision for the weight given to *a treating source's opinion*.") (emphasis in original). However, even if the Magistrate applied the improper standard, as Bond alleges, the "good reasons" requirement of the treating physician rule is a higher standard than the previously discussed requirements of SSR 06-03P. A finding that the ALJ had shown good reasons would generally imply that the less exacting standard of SSR 06-03P had been met. Regardless, the important point is that this Court concurs with the conclusion of the Magistrate that the weight placed on McLellin's opinions was appropriate and supported by substantial evidence. As a result, Bond's objection is overruled.

Finally, even if Bond were correct that the ALJ had not properly evaluated the credibility of McLellin and his statements did preclude Bond from returning to his past work, the ALJ accepted the testimony of the Vocational Expert that there were a significant number of other jobs in the national economy that Bond could do. Bond attempts to argue that rejecting

11

McLellin's testimony would change the result at Step Five as well, but fails to persuasively support that contention. Instead, he simply notes that the Vocational Expert did not find a substantial number of jobs available for someone as limited as Bond alleged himself to be. However, the Court has already found that substantial evidence supported the ALJ's credibility determination of Bond's statements. Thus, even if McLellin's statements were accepted, and even if that changed the result at Step Four, the Commissioner still carried its burden of showing that Bond was not disabled at Step Five.

### III

Accordingly, for the aforementioned reasons, it is hereby **ORDERED** as follows:

1. The Plaintiff's Objections to the Magistrate's Report and Recommendation [R. 21] are **OVERRULED**;

2. The Magistrate Judge's Report and Recommendation [R. 20] is **ADOPTED** as and for the opinion of this Court;

3. The Plaintiff's Motion for Summary Judgment [R. 16] is **DENIED**;

4. The Defendant's Motion for Summary Judgment [R. 17] is **GRANTED**; and

5. **JUDGMENT** in favor of the Defendant will be entered contemporaneously herewith.

6. This matter is **STRICKEN** from the Court's active docket.

This the 30th day of September, 2014.

